## Claypool v. Doc Francis, Fred Siddens and Cecil Jones.

(Decided December 12, 1924.)

### Appeal from Warren Circuit Court.

1. Alteration of Instruments—Evidence Held to Show that Contract for Sale of Land Was Altered.—Evidence held to show that it was the agreement of the parties that note of third person to be taken in part payment for land should be well secured and that cancellation of such provision in the written contract occurred subsequent to execution.

2. Alteration of Instruments—Who Made Erasure After Execution of Contract, or Whether Made by or with procurement of Any Person, Held Immaterial.—Where contract for sale of land provided that note to be given therefor should be "well secured," which words were erased after execution, it was immaterial, in vendor's suit based on such provision, who made erasure or whether it was made by or with procurement of any person.

3. Vendor and Purchaser—Vendor Entitled to Judgment Against Purchaser for Releasing Security Held by Him to Secure Note of Third Person Given to Pay for Property.—Where purchaser contracted that note of third person to be given for property should be "well secured" and afterward voluntarily parted with security held by him, vendor was entitled to judgment against purchaser; evidence showing that security was of value more than his debt.

RODES & HARLIN and THOMAS, THOMAS & LOGAN for appellant.

BASIL RICHARDSON and WILL D. GILLIAM for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing.

Prior to the 24th of November, 1920, appellant was the equitable owner of a house and lot in Bowling Green. Shortly before, through Hundley, a real estate agent, he had bought the property but the same had not yet been conveyed to him. He evidently had bought it for speculative purposes as he immediately placed the property in Hundley's hands again for resale.

Hundley approached Siddens and interested him in the purchase of the house and lot, showed it to him, and Siddens offered him $4,750.00 for the house and lot, if appellant would accept as part payment an automobile at $800.00 and also accept a note for $1,750.00 which he held against Francis, which he told Hundley was "well secured by more than enough diamonds down here in the bank to pay it." He reported this proposition to Claypool, and after investigation by Claypool of the automobile, and after inquiry by him at the bank as to the diamonds held as collateral by Siddens to secure the indebtedness of Francis to Siddens, he accepted the proposition.

Upon such acceptance Hundley went to his office and there had his partner, Hanes, to draw up a written contract reciting the terms of this agreement between Claypool and Siddens which he first took to Claypool and had him to sign, and then took to Siddens when it was signed by him.

That original contract is before us, and as originally prepared it recites that Claypool had sold the house and lot

"to the said second party according to the deed therefor for the sum of $3,950.00 and an Allen touring automobile of which the said Allen automobile has been delivered, the receipt of which is hereby acknowledged, and for $1,750.00 the first party (Claypool) agrees to accept notes against Doc Francis (well secured), and for the remaining $2,200.00 the said second party agrees to pay off, which is now a lien on the property herein conveyed and fully explained in the deed therefor."

At the time Siddens held as collateral to secure him in an indebtedness of ten or twelve thousand dollars,

owing him by Francis, three or four thousand dollars worth of diamonds and a number of oil leases.

A few days after the 24th of November, Francis executed directly to Claypool his note for $1,750.00 payable some time in January, 1921, and this was done by Francis at the instance of Siddens, his creditor, and Siddens delivered this note in person to Claypool.

The note which Siddens procured Francis to execute to Claypool for $1,750.00 was dated December 1, 1920, just one week after the date of the written contract between Claypool and Siddens. At that time Siddens had in his possession the diamonds which had been pledged by Francis to him along with other property, to secure Francis' large indebtedness; but on the second day of December, and the next day after the $1,750.00 note had been executed to Claypool, Siddens and Francis had a settlement by the terms of which Francis secured Siddens in his remaining indebtedness by the execution of mortgages on real estate, and at that time Siddens turned over to Francis the diamonds and other securities held by him, so that then Claypool was left with no security for the payment of his note.

There was then just two questions of fact; the first is whether under the original agreement the note to be executed by Francis to Claypool was to be well secured, and second whether the words ''well secured'' were in the writing at the time it was signed by the parties. The first question is unimportant except in so far it may bear upon the second, for there is no pleading which seeks to reform the written contract, or to strike these words from it. The sole question then is whether the words ''well secured'' which were originally written into the contract were in it when it was signed by the parties, or whether they were stricken out or erased thereafter.

It is the contention of Siddens, and is testified to by him, that Hanes first placed the words ''well secured'' in the typewritten contract, but that he objected to those words because they did not conform to his understanding of the agreement, and that then before he signed it the paper was placed back in the typewriter and those two words cancelled by marking over them with the machine several x's indicating their cancellation. But he distinctly says in his evidence that at the time he signed it

there was no cancellation or erasure over those words in ink. His evidence is corroborated as to the terms of the original agreement by two other witnesses.

On the contrary, Claypool and Hundley each emphatically state that according to the terms of the original agreement, the note to be given by Francis to Claypool was to be well secured, and that Siddens told them at the time he had the diamonds in his possession to secure its payment, and showed to Hundley the written contract of escrow whereby the diamonds and leases were placed in his possession to secure Francis' indebtedness to him, and it is admitted by Siddens that he showed that paper to Hundley. Not only so, it is testified by Claypool, Hundley and Hanes that the words "well secured" were written into the instrument by Hanes at the direction of Hundley who had negotiated the deal between Siddens and Claypool, and that those words were in the writing when signed by the parties.

The writing remained at the office of Hundley and Hanes until some time in January when Siddens himself being in Florida, a business associate of his called at their office and was permitted to take the contract and have the custody of it for a short time and carefully examine it. Thereafter when the writing was examined it was found, not as will hereafter be set forth that the words "well secured" had been cancelled by the typewriter, but that those words had been cancelled by a thick coating of ink run over them.

The writing is before us and it is the contention of appellee that it was first cancelled by the typewriter, and nobody accounts for the attempted cancellation by ink. A careful inspection of the writing shows unmistakably that the words were originally written in typewriter in the instrument, and fails to disclose under the ink erasure on its face, or by indication on the back of the thin paper, that the typewriter x had ever been used in cancelling the words; and so far as we may discern from its present condition it was never cancelled or attempted to be cancelled either before or after its signature, except by the clumsy use of ink.

There then having been no cancellation in ink before the contract was signed as admitted by Siddens, and the writing on its face showing that it has never been cancelled on the typewriter either before or since it was

signed, it seems to necessarily follow that the cancellation in ink was made since it was signed.

We are, therefore, convinced, from an inspection of the writing and from a careful analysis of the evidence, that the agreement between the parties was that the Francis note should be well secured, and that such agreement was placed in the writing and was there when signed by the parties.   It is not in harmony with the usual method of disposing of one's real estate; it would be most unusual for a sensible man to part with title to his real estate and accept as a cash payment an unsecured note of a third party, and particularly as in this case where there was no cash payment whatsoever.

We gather from the chancellor's opinion that he largely placed his judgment upon the failure to show that if the erasure was made after the instrument was signed there was a total failure to show either that Siddens had done it or had caused it to be done.   We think this is wholly immaterial for the purposes of this case. The question is not whether Siddens made or had made the erasure so as to change the meaning of the written contract between the parties, but the only question is was the erasure made after the contract was entered into, it being wholly immaterial who made it or whether it was made by or with the procurement of any person.

Siddens having voluntarily parted with the security held by him and which he had pledged to secure the Francis note to Claypool, the latter was entitled to a judgment against him, the evidence showing that security was of value largely more than his debt.

The judgment is reversed with directions to enter a judgment in favor of the plaintiff against Siddens.